# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP1882-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Cole J. White, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>       Complainant,<br>    v.<br>Cole J. White,<br>       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST WHITE

| | |
|---|---|
| OPINION FILED: | August 23, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP1882-D

STATE OF WISCONSIN      :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Cole J. White, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

      **v.**

**Cole J. White,**

      **Respondent.**

**FILED**

**AUG 23, 2019**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review a supplemental referee's report and recommendation concluding that Attorney Cole J. White committed 27 counts of professional misconduct in his handling of four client matters. The referee recommended that this court impose a 15-month suspension of Attorney White's law license. We adopt the referee's findings of fact, conclusions of law, and recommendation regarding discipline. We also agree with the referee's recommendation that Attorney White be required to make restitution to two clients. Finally, we impose the full costs

of this proceeding, which total $17,105.44 as of January 23, 2019, on Attorney White.

¶2 Attorney White was admitted to practice law in Wisconsin in 2013 and practices in Green Bay. He has no prior disciplinary history.

¶3 On September 26, 2017, the Office of Lawyer Regulation (OLR) filed a complaint against Attorney White alleging 28 counts of professional misconduct. Attorney White filed an answer on November 24, 2017. James R. Erickson was appointed referee on December 12, 2017.

¶4 An evidentiary hearing was held on September 12, 2018. Attorney White chose not to appear in person at the hearing. His counsel, Attorney Jevon J. Jaconi, appeared on his behalf. Pursuant to an agreement between Attorney Jaconi and counsel for the OLR, with the approval of the referee, the deposition transcript of Attorney White, including exhibits, was offered and received into evidence. Two of Attorney White's former clients testified in person at the hearing, and two testified telephonically. Testimony was also taken from other witnesses, both in person and telephonically.

¶5 The referee issued his initial report and recommendation on January 3, 2019. On April 9, 2019, this court remanded the matter to the referee for further proceedings. The referee issued a supplemental report on June 10, 2019.

¶6 In his supplemental report, the referee noted that the parties agreed to dismiss one of the counts in the complaint. The referee further noted that Attorney White stipulated to 17

2

counts in the complaint. The referee found that the OLR had met its burden of proof with respect to the 10 remaining disputed counts.

¶7 The OLR's complaint alleged eight counts of misconduct with respect to Attorney White's representation of S.E. In September 2012, the Neenah Police Department and the Lake Winnebago Area Metropolitan Enforcement Group conducted a raid of S.E.'s business pursuant to a "no-knock" search warrant issued by Winnebago County Circuit Court Judge Scott Woldt, based upon suspicious illegal drug activities. S.E. was charged with several felonies following the raid. In December 2013, he pled no contest to a signal misdemeanor possession charge. All other charges were dropped.

¶8 During the criminal proceeding against S.E., S.E.'s attorney brought a motion to suppress evidence on the basis that the warrant was not valid because Judge Woldt was not "neutral and detached" and should have disqualified himself from issuing the warrant. The motion was denied.

¶9 In June of 2014, S.E. hired Attorney White to file a federal civil rights lawsuit against the City of Neenah and others as a result of the raid. Attorney White provided S.E. with a fee agreement charging a flat fee of $4,500 plus a 30 percent contingent fee on any settlement. S.E. was to be responsible for any costs. The fee agreement did not state Attorney White's intention to use the alterative fee placement measures allowed under former SCR 20:1.15(b)(4m). S.E. paid

3

Attorney White the $4,500 flat fee in installments. Attorney White did not place any of the money in his trust account.

¶10 On December 2, 2014, Attorney White filed a lawsuit in United States District Court for the Eastern District of Wisconsin. The plaintiffs included S.E. and his business, as well as adjoining business owners. The defendants included the City of Neenah, the Neenah Police Department, Judge Woldt, the Neenah Police Chief, a captain of the Neenah Police Department, and Winnebago County. Attorney White's complaint against Judge Woldt was based on the judge's signing of the search warrant, which the plaintiffs asserted was "overly broad and invalid." The complaint also alleged the judge was not neutral because of a prior dispute between him and S.E.

¶11 Judge Woldt was represented in the lawsuit by Assistant Attorney General David C. Rice. On December 9, 2014, AAG Rice filed a motion to dismiss on numerous grounds including judicial immunity, Eleventh Amendment immunity, failure to state a claim upon which relief can be granted, issue preclusion, and lack of jurisdiction. Attorney White did not respond to the motion to dismiss, and the court granted it on February 5, 2015. Attorney White told the OLR he did not respond to the motion because he believed it would be granted. Attorney White admitted to the OLR that the complaint he filed was "bloviated and histrionic," but he said he filed it anyway because it was what his client wanted "in terms of sending a message."

¶12 Attorney White failed to respond to requests that he provide dates that his clients would be available for a

4

deposition. He also failed to respond to interrogatories and requests for production of documents.

¶13 S.E. periodically contacted Attorney White to find out the status of the case. Attorney White would respond by saying that everything was taken care of, things were going well, and he hoped to set up a settlement conference. On November 13, 2015, counsel for the City of Neenah and the Neenah Police Department filed a motion to dismiss based on the plaintiffs' failure to prosecute the action. Attorney White failed to provide his clients with a copy of the motion to dismiss. On November 30, 2015, Attorney White responded to the motion claiming he had moved his office and did not receive deposition notices until the day after they were scheduled to take place because the defendants had mailed the notices to his former office address. Attorney White also claimed he had notified the defendants of his new office address in June 2015 and that the plaintiffs had all the evidence they needed to proceed to trial. Attorney White did not copy his clients with his response to the motion to dismiss. After filing the response, Attorney White mentioned the motion to dismiss in a text message he sent to S.E. that included the statement "we filed a response calling out their game."

¶14 On December 1, 2015, counsel for Winnebago County also filed a motion to dismiss due to the plaintiffs' failure to state a claim against the County and the plaintiffs' failure to prosecute the case. On December 14, 2015, counsel for the Neenah Police Department and the City of Neenah filed a reply to

5

Attorney White's response to their motion to dismiss alleging that the response contained flagrant misrepresentations.

¶15 On January 2, 2016, Attorney White filed a response to Winnebago County's motion to dismiss that was identical to his response to the City of Neenah's and Neenah Police Department's motion. Attorney White included no supporting affidavits or memorandum, and he did not copy his clients on his response.

¶16 On January 20, 2016, the court issued a decision granting the remaining defendants' motions to dismiss and ordering Attorney White to personally pay a sanction of $1,500 to the defendants. Attorney White failed to inform S.E. and the other plaintiffs of the dismissal order. S.E. learned about the dismissal when reporters asked him for comment.

¶17 On January 26, 2016, S.E. wrote to Attorney White directing him to file an appeal. Attorney White falsely informed S.E. that he "never received a goddamned email from them about dates" and that the defendants had filed a motion to dismiss because Attorney White did not timely receive notice of the deposition. Attorney White agreed to file a notice of appeal and said the judge's decision was "filled with so many lies, misstatements and misconstructions it verges on the absurd."

¶18 S.E. subsequently hired new counsel. On February 17, 2016, S.E.'s new counsel filed a motion to alter or amend the judgment dismissing the case. The motion was denied, with the court commenting that "the merits of the complaint, which had named a judge, were not particularly strong."

6

¶19 In April 2016, S.E. filed a grievance against Attorney White with the OLR. In Attorney White's response to the grievance, he falsely said that he had had several conversations with S.E. about the depositions and that S.E. had expressed exasperation and annoyance about having to answer questions. Attorney White also falsely stated that he had a telephone conversation with counsel for the defendants telling them the location of the depositions was problematic. Attorney White also falsely told the OLR that he had informed the defendants' counsel of his new address in a telephone call.

¶20 Attorney White also provided an email to the OLR, purportedly written on September 14, 2015, in which he requested a call to discuss scheduling depositions. The email was fabricated.

¶21 Attorney White has not paid the $1,500 in costs and attorney's fees as ordered in the court's January 20, 2016 decision.

¶22 The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of S.E.:

7

**Count 1:** By failing to hold the advanced fees that S.E. paid to him in trust, Attorney White violated former SCR 20:1.15(b)(4).[1]

**Count 2:** By naming Judge Woldt as a defendant despite his immunity as a judge from civil suits for his judicial acts and the existence of multiple other grounds precluding a civil action against Judge Woldt, Attorney White violated SCR 20:3.1(a)(1).[2]

**Count 3:** By failing to respond to requests from opposing counsel and by failing to otherwise take action to prosecute his clients' case, Attorney White violated SCR 20:1.3.[3]

---

[1] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, 2016 WI 21 (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

Former SCR 20:1.15(b)(4) provided:

Except as provided in par. (4m) unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[2] SCR 20:3.1(a)(1) provides: "In representing a client, a lawyer shall not knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law."

[3] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

8

**Count 4:** By failing to respond to the defendants' discovery requests, Attorney White violated SCR 20:3.4(d).[4]

**Count 5:** By failing to inform S.E. and the other plaintiffs of the defendants' discovery requests, including interrogatories and deposition notices and by failing to inform them of the dismissal of the lawsuit, Attorney White violated SCR 20:1.4(a)(3).[5]

**Count 6:** In the course of the federal lawsuit filed on behalf of S.E., by making false statements in documents filed with the court, Attorney White violated SCR 20:3.3(a)(1).[6]

**Count 7:** By making false statements to his client about the status of the case and the conduct of the opposing parties, Attorney White violated SCR 20:8.4(c).[7]

**Count 8:** In the course of the OLR's investigation, by fabricating an email in an effort to show that he had responded to opposing counsel's request to schedule depositions and inform them of his new office address, by falsely asserting that he and/or his intern had telephone conversations with opposing counsel, and telling the OLR "the court records were updated" in response to the OLR's request for evidence that he had informed opposing counsel of his new address, and that

---

[4] SCR 20:3.4(d) provides: "A lawyer shall not in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party."

[5] SCR 20:1.4(a)(3) provides: "A lawyer shall keep the client reasonably informed about the status of the matter."

[6] SCR 20:3.3(a)(1) provides: "A lawyer shall not make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

[7] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

9

he had several conversations with his clients about scheduling depositions, Attorney White violated SCR 22.03(6),[8] enforceable via SCR 20:8.4(h).[9]

¶23 The second client matter detailed in the OLR's complaint involved Attorney White's representation of R.R., who hired Attorney White to represent him in modifying a custody and placement order that granted R.R.'s ex-wife sole custody and granted R.R. supervised visits and telephone contact with his daughter. At the time he undertook this representation, Attorney White had little or no experience in custody and placement cases.

¶24 On September 23, 2014, Attorney White provided R.R. with a written agreement to represent him "in connection with the alteration of custody and placement order currently in effect with K.K.," which would "include counseling, advocacy and representation in all hearings, motions, mediations and any other proceedings arising in or related to this action." Attorney White charged R.R. a flat fee of $11,000 and described the fee as being non-refundable. The fee agreement did not

---

[8] SCR 22.03(6) provides: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[9] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

state Attorney White's intention to use the alterative fee placement measures allowed under former SCR 20:1.15(b)(4m). R.R.'s mother and step-father paid the $11,000 advanced fee to Attorney White. Attorney White did not place the money in his trust account.

¶25 On June 26, 2015, Attorney White filed a three-page standard "fill in the blank" motion to modify form available on the court's website. The motion requested that physical placement of R.R.'s daughter be modified from primary placement to shared placement and legal custody be modified to joint legal custody. The factual basis alleged in support of the motion was that the mother regularly withheld visitation and contact and had made baseless criminal allegations against Attorney White's client.

¶26 A motion hearing was held before a court commissioner on September 23, 2015. The court commissioner denied the motions since no substantial change had been alleged since the September 26, 2013 custody and placement order; the psychological issues that served as the basis for supervised visitation had not been addressed; and the allegations of interference with visitation were more properly the subject of an enforcement motion.

¶27 Despite R.R. providing Attorney White with a substantial amount of documentation about the placement case, including police reports, court records, and other documents, Attorney White did not provide any of those documents to the court commissioner.

11

¶28 Attorney White claimed that after the September 2015 hearing he informed R.R. he would pursue a new application to the court to modify placement, but that R.R. never provided the necessary information. As a result, Attorney White said he considered the case closed. Attorney White had no documentation that he ever explained to R.R. the outcome of the motion, that he requested additional information from R.R. to pursue the matter, or that he considered the matter closed. Attorney White provided no documentation that he earned the entire $11,000 advanced fee.

¶29 Attorney White subsequently led R.R. to believe that the custody matter was ongoing and advised R.R. to claim a Texas residence in order to establish a substantial change in circumstances.

¶30 On September 23, 2015, R.R. hired Attorney White to pursue a second matter, a defamation claim against his ex-wife alleging she falsely accused him of molesting their daughter. Attorney White provided R.R. a second fee agreement which provided for a flat fee of $5,000 that was described as non-refundable. The agreement acknowledged receipt of an initial $200 payment and called for additional payments of $300 on September 24 and $4,500 by October 9. The second fee agreement did not state Attorney White's intention to use the alterative fee placement measures allowed under former SCR 20:1.15(b)(4m).

¶31 R.R. paid Attorney White a total of $2,700 toward the defamation action. Attorney White did not place the funds in his trust account.

¶32 In January 2016, R.R. sent Attorney White a text message inquiring about the status of both cases. Attorney White offered to meet R.R. on January 15, 2016, and R.R. confirmed the meeting with a text message to Attorney White on January 15. When R.R., along with his mother and step-father, arrived for the meeting, Attorney White was leaving and claimed the meeting had not been confirmed. At the January 15, 2016 meeting, R.R. provided Attorney White with a Texas address. Attorney White maintained the custody case was ongoing and he had scheduled 19 court dates but had to cancel them because R.R. was unavailable.

¶33 On March 1, 2016, after not hearing from Attorney White, R.R. sent Attorney White a text message asking about a court date in the custody matter. R.R. asked that Attorney White return the remaining funds paid to him in the defamation case. Attorney White failed to respond.

¶34 On April 27, 2016, R.R. filed a grievance against Attorney White with the OLR. In response, Attorney White acknowledged a refund was due in the defamation case. He said he had not provided R.R. with a refund because R.R. had not clarified that he wanted to terminate the representation, despite Attorney White's repeated efforts to reach him over the past 10 weeks. Attorney White had no documentation of any attempts to contact R.R.

¶35 On June 5, 2016, Attorney White sent R.R. a letter accounting for the fees in the defamation action. Attorney White charged R.R. for 12.5 hours of legal work, for a total of

13

$3,125. Although the accounting exceeded the advanced fees, Attorney White refunded R.R. $270.

¶36 As to the reasonableness of the $11,000 advanced fee in the custody case, Attorney White acknowledged the "fee was higher than necessary." However, Attorney White told the OLR that the fee was reasonable based upon his research in Nolo guides and on Google, as well as his expectation that there would be weekly calls and meetings and a large amount of documents to review.

¶37 R.R. says he visited Attorney White's office at least ten times and left repeated phone messages asking that Attorney White return his file. While Attorney White claims he returned the file to R.R. on June 5, 2016, R.R. denies receiving it.

¶38 The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of R.R.:

> **Count 9:** By charging R.R. $11,000 to represent him in bringing a standard motion to modify a custody order when Attorney White had no experience handling such matters, performed little work, and achieved no results, Attorney White violated SCR 20:1.5(a).[10]

---

[10] SCR 20:1.5(a) provides:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(continued)

14

**Count 10:** By failing to hold in trust the $11,000 and the $2,700 advanced fees paid to him for the two matters he agreed to handle on R.R.'s behalf, with no evidence of an intention to utilize the advanced fee alternative, Attorney White in each instance violated former SCR 20:1.15(b)(4).

**Count 11:** By failing to review file materials, obtain evidence, and develop a viable strategy for pursuing R.R.'s objective of modifying the placement order and addressing the specific issues that served as the basis for supervised placement, Attorney White violated SCR 20:1.1.[11]

**Count 12:** By failing to take sufficient action on behalf of R.R. to achieve his objective of returning to shared custody and unsupervised placement with his daughter, Attorney White violated SCR 20:1.3.

---

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[11] SCR 20:1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

**Count 13:** By failing to take any action on behalf of R.R. to pursue the defamation claim Attorney White agreed to handle, Attorney White violated SCR 20:1.3.

**Count 14:** By providing R.R. with false case status information in the post-divorce custody and placement case, including leading R.R. to believe the case was ongoing, Attorney White violated SCR 20:8.4(c).

**Count 15:** By failing to return R.R.'s file to him upon termination of the representation; failing upon termination of the representation to refund to R.R. the fees paid to Attorney White in advance to pursue modification of a custody and placement order, which fees Attorney White could not establish were earned; and failing upon termination of the representation to refund to R.R. the fees paid to Attorney White in advance to pursue a defamation action, which fees Attorney White could not establish were earned, Attorney White, in each instance, violated SCR 20:1.16(d).[12]

**Count 16:** By misrepresenting to the OLR that he had returned R.R.'s file, Attorney White violated SCR 22.03(6), enforceable via SCR 20:8.4(h).

¶39 The third client matter detailed in the OLR's complaint involved Attorney White's representation of K.G., who hired Attorney White to represent her in a dispute with her former landlord in January of 2016. In November 2015, K.G., who

---

[12] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

operated a dance studio, received a notice to quit or pay rent. The landlord asserted that K.G. owed over $38,000 in rent, maintenance, expenses, and property tax. K.G. vacated the property in late December 2015.

¶40 On January 9, 2016, K.G. paid Attorney White an advanced fee of $1,000. Attorney White led K.G. to believe a resolution of the lease dispute was possible. K.G. denies receiving a fee agreement from Attorney White. Attorney White later gave the OLR an unsigned fee agreement that stated he agreed to provide "counseling, advocacy, and any negotiation conferences or settlement meetings should they occur," but not any "in court" activities. The agreement provided that the fees would be charged on a flat fee basis for a period of one year. The agreement did not state Attorney White's intention to use the alterative fee placement measures allowed under former SCR 20:1.15(b)(4m).

¶41 Attorney White told the OLR that after he was hired he made several attempts to communicate with counsel for K.G.'s landlord, but he provided no documentation to support that statement. In May 2016, the landlord filed suit against K.G. and her business seeking a money judgment for amounts due under the lease agreement. K.G. was served on May 20, 2016. She notified Attorney White of the lawsuit by text message that day and informed him the answer was due in 20 days. Attorney White informed K.G. he had been "calling the lawyer for two weeks daily with no returns" and asked that she fax a copy of the complaint to him.

17

¶42 K.G. did not have a fax machine and offered to drop off the complaint at Attorney White's office on May 21, 2016. Attorney White offered to meet K.G. elsewhere as his office would be closed. The meeting never took place.

¶43 Throughout May and June 2016, K.G. contacted Attorney White several more times via text message with questions about filing for bankruptcy and requesting that Attorney White contact opposing counsel to offer a lesser amount. Attorney White told K.G. that the landlord's attorney stated on a couple occasions he would talk to his client, but that Attorney White had heard nothing back from him.

¶44 On June 7, 2016, K.G. asked Attorney White if he could file an answer. Attorney White did not respond. K.G. sent another text message asking if Attorney White was able to file the answer. Attorney White responded that K.G. never provided him with a copy of the complaint and that he would need that in order to do anything. K.G. provided Attorney White with a copy of the complaint that same day via email and text message. Attorney White acknowledged receipt of the complaint and told K.G., "I'll file an answer at no additional charge. But if this goes into further litigation without resolution then there will be additional fees."

¶45 On June 9 and 10, 2016, K.G. asked Attorney White if there were any updates, and Attorney White failed to respond. Attorney White failed to file an answer on K.G.'s behalf. On June 21, 2016, the landlord's attorney filed a motion for default judgment. K.G. received notice of the default judgment

18

motion in the mail on June 22, 2016. She contacted Attorney White, who responded that he had not known that half the time for a response had elapsed when he agreed to file an answer and said "an Answer isn't something that I can turn out overnight."

¶46 On June 23, 2016, K.G. sent Attorney White a certified letter terminating his representation and requesting that Attorney White send her an itemization of his services. Attorney White responded on July 18, 2016, refusing to return any fees. He claimed he had fulfilled the purpose of their agreement, and he failed to provide an accounting.

¶47 Counsel for K.G.'s landlord said that to his knowledge he never had any contact with Attorney White either before or after filing the lawsuit against K.G.

¶48 K.G. hired successor counsel, who moved to reopen the case. The matter was settled before the action was reopened, with K.G. paying the full amount owed.

¶49 K.G. filed a grievance against Attorney White with the OLR. During the OLR's investigation, Attorney White falsely told the OLR he had made several attempts to contact the landlord's attorney and that after the lawsuit was filed he informed opposing counsel's office that he represented K.G.

¶50 The OLR's complaint alleged the following counts of misconduct of with respect to Attorney White's representation of K.G.:

> **Count 17:** By failing to hold in trust the advanced fees paid to him by K.G., Attorney White violated former SCR 20:1.15(b)(4).

19

**Count 18:** By failing to take any action to attempt to resolve K.G.'s dispute with her landlord prior to the filing of the collection lawsuit; and by failing to file an answer on K.G.'s behalf to the collection lawsuit, Attorney White, in each instance, violated SCR 20:1.3.

**Count 19:** By providing K.G. with inaccurate case status information, including by representing to his client that he had contacted opposing counsel in an effort to negotiate resolution of her lease dispute, when he had taken no such action, Attorney White violated SCR 20:8.4(c).

**Count 20:** By failing to provide K.G. a bill itemizing the services he provided in order to substantiate that he had earned the fee advanced to him, Attorney White violated SCR 20:1.5(b)(3).[13]

**Count 21:** By failing upon termination of the representation to refund to K.G. the $1,000 advanced fees she paid and which he had not earned, Attorney White violated SCR 20:1.16(d).

**Count 22:** In the course of the OLR's investigation of K.G.'s grievance, by willfully providing the OLR false information that he had made several attempts to contact counsel for the landlord and, once the lawsuit was filed, had informed opposing counsel's office that he represented K.G., Attorney White violated SCR 22.03(6), enforceable via SCR 20:8.4(h).

¶51 The final client matter detailed in the OLR's complaint involved Attorney White's representation of W.B., who hired Attorney White to file a social security disability claim in September 2015. On September 11, 2015, W.B. signed a fee agreement. The agreement required a $1,500 flat fee and stated that Attorney White would charge an additional "10% of any back-

---

[13] SCR 20:1.5(b)(3) provides: "A lawyer shall promptly respond to a client's request for information concerning fees and expenses."

pay settlement amount collected." The fee agreement did not state Attorney White's intention to use the alterative fee placement measures allowed under former SCR 20:1.15(b)(4m). Attorney White failed to place the $1,500 advanced fee in his trust account.

¶52 In December 2015, W.B. moved to Florida and provided Attorney White with his new address. Over the next few months, W.B. sent Attorney White periodic text messages inquiring about the status of the claim. On March 1, 2016, W.B. texted Attorney White. Attorney White failed to respond. On April 25, 2016, Attorney White responded to W.B.'s request for an update saying, "Yes it's under review. It's a painfully slow process." On June 29, 2016, W.B. again requested an update, and Attorney White again failed to respond.

¶53 On July 5, 2016, W.B. sent Attorney White a message saying he understood that Attorney White was experiencing some health issues but that W.B. needed to know what was happening. Attorney White responded the same day saying, "It takes 6-12 months for even an initial review date."

¶54 On August 18, 2016, W.B. went to a Social Security Administration office in Florida to check on his disability application and learned there was no application on file for him. When W.B. texted Attorney White informing him that the Social Security Administration had no record of his claim, Attorney White responded that he uses a "sub atty for those cases" and he promised to follow up. Attorney White said if no action had been taken he would refund W.B.'s fee. W.B. was not

aware of and never consented to Attorney White referring his case to another attorney.

¶55 On August 26, 2016, W.B. filed his own application for disability benefits with the Social Security Administration and instructed Attorney White to send him a refund by the end of the week. Attorney White said he would send a refund. He also said he spoke to and terminated the attorney to whom he had referred W.B.'s case. However, on or about August 26, 2016 through September 29, 2016, the attorney to whom Attorney White claimed he referred the case was in jail.

¶56 On September 7, 2016, W.B. sent Attorney White a text message asking about the refund. Attorney White said it "went in the mail on Friday." On September 14, 2016, W.B. texted Attorney White again saying he had not received the refund. Attorney White failed to respond. On September 19, 2016, still not having received a refund, W.B. sent Attorney White another text message expressing his frustration with Attorney White's dishonesty and asking that he "do the right thing." Attorney White responded by saying he was trying to track down the mailing and denied he was trying to deceive W.B. W.B. replied with a request for a replacement check. Attorney White promised to check on the issue the next morning.

¶57 On October 10, 2016, W.B filed a grievance against Attorney White with the OLR. Attorney White failed to respond to an initial request to respond to the grievance. On December 12, 2016, Attorney White emailed the OLR acknowledging that nothing had been done on W.B.'s case and claiming he had

22

contracted the filing out to another attorney and that attorney was having legal problems. Attorney White said he planned to refund W.B.'s fee in two installments, but he held off because he did not want there to be an appearance of impropriety in sending W.B. money without the OLR's approval.

¶58 On December 19, 2016, the OLR sent follow-up correspondence to Attorney White informing him that his email did not fully respond to all issues raised by W.B.'s grievance. The OLR also informed Attorney White he did not need the OLR's approval to refund fees.

¶59 On January 24, 2017, the OLR received Attorney White's supplemental response to W.B.'s grievance. Attorney White provided copies of forwarded email messages purportedly exchanged with the attorney he claimed he retained to handle W.B.'s case. Attorney White claimed, without documentation, that he had paid the other attorney $1,200 to handle W.B.'s case via a money order from Kwik Trip. The other attorney reviewed all of his emails, text messages, and personal calendar and was unable to place W.B. as a client. The other attorney also could not locate any emails purportedly sent to him from Attorney White regarding W.B.; he denied ever receiving $1,200 from Attorney White to handle W.B.'s case; and he said he never handled or wanted to handle social security disability claims.

¶60 Attorney White told the OLR he mailed a $750 refund check to W.B. on January 10, 2017 and that he would mail a second $750 refund check on February 19, 2017. As of March 2, 2017, W.B. had not received any refund check.

¶61 On March 2, 2017, the OLR sent Attorney White correspondence via email and regular mail inquiring about the refund. Despite being copied with the OLR's correspondence to W.B. at his current address, Attorney White told the OLR, "I don't have a good address for him and no contact information for him anymore. The address I had is not correct. If you have it I'd love to get this to him." The OLR responded by providing Attorney White with W.B.'s current address. On March 9, 2017, W.B. confirmed receipt of two $750 refund checks from Attorney White. Attorney White included a handwritten note claiming he had initially missed a "9" in W.B.'s address. The note asked that W.B. only cash one of the checks and wait until the end of the month to cash the other one.

¶62 The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of W.B.:

> **Count 23:** By failing to hold the advanced fee he received from W.B. in trust, Attorney White violated former SCR 20:1.15(b)(4).
>
> **Count 24:** By failing to pursue W.B.'s social security disability claim, Attorney White violated SCR 20:1.3.
>
> **Count 25:** By providing W.B. misleading information regarding the status of his social security claim, implying that the case was progressing and that he had hired another attorney to pursue the claim when neither was true, Attorney White violated SCR 20:8.4(c).
>
> **Count 26:** By failing upon termination of the representation to promptly refund W.B.'s entire fee, none of which was earned, Attorney White violated SCR 20:1.16(d).

24

**County 27:** By misrepresenting to W.B. in September 2016 that he had mailed his refund to him, Attorney White violated SCR 20:8.4(c).

**Count 28:** In the course of the OLR's investigation of W.B.'s grievance, by willfully providing the OLR information that was not true, including falsified emails and assertions that he had referred W.B.'s case to another lawyer who neglected the case, that he had paid that lawyer $1,200 to handle the case, and that he had mailed W.B. a refund check on January 10, 2017, Attorney White violated SCR 22.03(6), enforced under the Rules of Professional Conduct via SCR 20:8.4(h).

¶63 The referee noted in his supplemental report that the parties agreed to the dismissal of count 14 of the complaint. It also noted that by stipulation of the parties filed on September 20, 2018, Attorney White agreed he was not contesting counts 1, 10, 17, and 23 of the complaint. The referee also noted that in his post-trial brief Attorney White stipulated to counts 2, 3, 4, 5, 6, 7, 8, 9, 13, 15, 16, 24, 25, 26, 27, and 28. The referee said that since Attorney White was essentially admitting the facts of the 16 stipulated counts, the facts alleged in the complaint as to each of those counts were found as true and correct and the referee further found that Attorney White committed each of those counts of misconduct.

¶64 The referee went on to conclude that the OLR met its burden of proof as to the remaining ten counts of misconduct. As to the appropriate sanction, the referee said it was quite clear that Attorney White was obviously not sufficiently experienced or knowledgeable enough to take on responsibility for any of the legal matters he accepted for any of the four clients who filed grievances against him. The referee noted

25

Attorney White apparently commenced his solo law practice shortly after graduating from law school. The referee said Attorney White:

> [H]as shown an apparent disdain for doing the necessary research or other work required to become a capable advocate for his clients in each case. Apparently he never asked himself "what do I have to prove in order to win this case?" Assistance that could have helped him has been readily available in Wisconsin if he had only been capable of recognizing his early limitations in complicated legal and practical matters of assisting his clients. The sad result is that his clients each suffered the consequences of his deficiencies.

¶65 The referee agreed with the OLR's recommended sanction, a 15-month suspension of Attorney White's license to practice law in Wisconsin. While the referee said that, to Attorney White's credit, he has admitted to many of the counts of misconduct, he "has offered no regrets or ideas for needed restitution due to his lack of ability in handling the matters which he undertook."

¶66 The referee recommended that Attorney White should be ordered to reimburse K.G. $1,000 and should be ordered to reimburse R.R. $13,430. Finally, the referee recommended that Attorney White be required to pay the full costs of this proceeding.

¶67 Neither party has appealed the referee's report, so this matter is submitted to the court for review pursuant to SCR 22.17(2). We review a referee's findings of fact subject to the clearly erroneous standard. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43,

26

675 N.W.2d 747. We review the referee's conclusions of law de novo. We determine the appropriate level of discipline independent of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶68 After careful review of the matter, we agree that a 15-month suspension of Attorney White's license to practice law in Wisconsin is appropriate. Although no two disciplinary matters are precisely alike, we find that the misconduct at issue here is somewhat similar to that presented in In re Disciplinary Proceedings Against Ruppelt, 2017 WI 80, 377 Wis. 2d 441, 898 N.W.2d 473. In that case, an attorney's license was suspended for 15 months for multiple counts of misconduct which included failure to hold client money in trust; dishonest billing practices; dishonesty to the OLR in its investigation; failure to properly communicate with a client; and false statements to a tribunal.

¶69 There are many similarities between the misconduct at issue in Ruppelt and the misconduct at issue here. In both cases, the attorneys repeatedly failed to follow the rules of professional conduct and engaged in a variety of misleading and deceptive behavior in an attempt to conceal their misconduct. Attorney White agreed to represent clients in areas of law in which he had little or no experience. He took their money and, to the extent he performed any legal services for the clients, his representation was profoundly deficient. He lied to his

clients and the OLR, and he has refused to refund fees. His misconduct warrants a 15-month license suspension.

¶70 We also agree with the referee's recommendation that Attorney White be required to make restitution in the amount of $1,000 to K.G. and $13,430 to R.R. Finally, as is our normal practice, we find it appropriate to impose the full costs of this disciplinary proceeding, which are $17,105.44, on Attorney White.

¶71 IT IS ORDERED that the license of Cole J. White to practice law in Wisconsin is suspended for a period of 15 months, effective October 4, 2019.

¶72 IT IS FURTHER ORDERED that within 60 days of the date of this order, Cole J. White shall pay restitution to R.R. in the amount of $13,430 and to K.G. in the amount of $1,000.

¶73 IT IS FURTHER ORDERED that within 60 days of the date of this order, Cole J. White shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $17,105.44.

¶74 IT IS FURTHER ORDERED that restitution is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶75 IT IS FURTHER ORDERED that Cole J. White shall comply with the provisions of SCR 22.26 regarding the duties of a person whose license to practice law in Wisconsin has been suspended.

¶76 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4)(c).

28