# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP1162-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceeding Against Cole J. White, Attorney at Law: |
| | |
| | Office of Lawyer Regulation, |
| |       Complainant, |
| | v. |
| | |
| | Cole J. White, |
| |       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST WHITE

| | |
|---|---|
| OPINION FILED: | November 25, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| Per Curiam. | |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP1162-D

STATE OF WISCONSIN    :    IN SUPREME COURT

**In the Matter of Disciplinary Proceeding Against Cole J. White, Attorney at Law:**

**Office of Lawyer Regulation,**

        **Complainant,**

**v.**

**Cole J. White,**

        **Respondent.**

**FILED**

**NOV 25, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. On December 19, 2019, Referee Robert E. Kinney filed a report recommending that Attorney Cole J. White be declared in default, concluding that Attorney White engaged in 44 counts of misconduct in 13 separate client matters warranting a two-year suspension of his license to practice law in Wisconsin, and recommending that Attorney White be ordered to

make restitution to various clients[1] and that this court impose the full costs of this proceeding, which are $2,514.74 as of January 7, 2020, on Attorney White.

¶2 We conclude that the referee's findings of fact pertaining to Attorney White's misconduct are supported by satisfactory and convincing evidence in the record. Attorney White failed to present a defense despite being given multiple opportunities to do so, and we declare him to be in default. We find that the egregiousness and extent of Attorney White's misconduct warrants a four-year suspension of his license rather than the two years recommended by the referee. In addition, we agree with the referee that Attorney White should be required to make restitution to various clients and he should be assessed the full costs of the proceeding.

¶3 Attorney White was admitted to practice law in Wisconsin in 2013. He practiced in Green Bay. In 2019 his Wisconsin law license was suspended, effective October 4, 2019, for a period of 15 months for 27 counts of professional misconduct arising out of four client matters. The misconduct included failing to hold advanced fees in trust; failing to respond to requests from opposing counsel; failing to take action to prosecute his clients' case; failing to respond to discovery requests; making false statements to his client about

---

[1] In response to an order to show cause issued by this court, the Office of Lawyer Regulation (OLR) recommends that Attorney White be required to make restitution to an additional client.

the status of a case and the conduct of the opposing parties; fabricating an email to the OLR; charging an unreasonable fee; and failing to return a client's file upon termination of the representation. In re Disciplinary Proceedings Against White, 2019 WI 86, 388 Wis. 2d 277, 932 N.W.2d 410. In addition, Attorney White's law license is administratively suspended for failure to pay state bar dues and failure to provide a trust account certification.

¶4 On June 27, 2019, the OLR filed its 44 count complaint against Attorney White. On July 23, 2019, Attorney White, through his counsel, Attorney Jevon Jaconi, filed a one-page answer. The referee was appointed on October 18, 2019. After filing the answer, Attorney White failed to participate in any of the OLR proceedings, including failing to appear for a deposition that had been noticed at Attorney Jaconi's office for November 27, 2019.

¶5 On December 2, 2019, the OLR filed a notice of motion and motion to strike Attorney White's answer and a motion for default judgment. A hearing on the motion was held before the referee on December 3, 2019. The referee had previously signed an order for Attorney White to appear at the proceeding, but he did not in fact appear.

¶6 At the December 3, 2019 hearing, the referee granted Attorney Jaconi's motion to withdraw as counsel for Attorney White. Attorney Jaconi stated at the hearing that Attorney White had "essentially disappeared" and had not been heard from since early October, around the time his license suspension went

3

into effect. Attorney Jaconi stated that Attorney White had cleared out his office and left a moving company with an unpaid bill. He further stated that all of Attorney White's telephone and email accounts were non-functional. Attorney Jaconi stated that he was not aware of Attorney White's current whereabouts but had heard from one source that he had gone to California and from another source that he had gone to Washington, D.C. Attorney Jaconi testified he heard that Attorney White's brother told some circuit court judges that Attorney White had committed suicide. There is no indication that this is true.

¶7 The referee then turned to the OLR's motion to strike Attorney White's answer and its motion for default judgment and granted both. The referee said he had "never seen anything quite like" the OLR's complaint against Attorney White and, "the attitude and statements that are cited in the complaint are not only stunning, but they show a degree of disrespect for clients and for the system that I've never encountered . . .." The referee found that Attorney White's conduct was egregious and that his abruptly leaving the area, without regard to his clients and without advising the OLR, was an extraordinary situation. The referee said, "to leave everyone in a lurch, as Attorney White has done, is unfathomable. Anyone would have to say how could any professional conduct himself in this way."

¶8 The referee said it was clear the public needed to be protected from Attorney White and for that reason he recommended that this court enter default judgment against Attorney White. The referee found that there was an adequate factual basis for

4

each of the 44 counts of misconduct alleged in the OLR's complaint and that, by default, Attorney White was found to have committed all of the alleged violations.  The OLR had asked for a two-year license suspension, and the referee concluded that was an appropriate sanction for Attorney White's misconduct. The referee recommended that Attorney White be required to pay restitution to a number of clients and that he be required to pay the full costs of this proceeding.

¶9  The allegations of the OLR's complaint will be briefly summarized here.  In 2017, K.C. hired Attorney White to represent him in a case in which K.C. had been charged with resisting/obstructing an officer; possession of THC, 2nd or subsequent offense; possession of cocaine, 2nd or subsequent offense; and possession of drug paraphernalia.  K.C. paid Attorney White $2,100.  The funds were paid in contemplation of future services.  Attorney White did not deposit the funds into his trust account.  Attorney White appeared with K.C. for two court appearances, after which K.C. attempted to advise Attorney White that he no longer needed his services and he wanted a refund of any unearned fees.  Attorney White failed to respond to K.C. and he failed to respond to the OLR's request for information after K.C. filed a grievance.

¶10 The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of K.C.:

> **Count 1:**  By failing to place advanced fees into his trust account, without evidence of an intention to

follow the SCR 20:1.5(g) alternative, Attorney White violated SCR 20:1.5(f).[2]

**Count 2:** By willfully failing to timely and fully respond to K.C.'s grievance, Attorney White violated SCR 22.03(2)[3] and SCR 22.03(6),[4] enforceable via SCR 20:8.4(h).[5]

---

[2] SCR 20:1.5(f) provides:

Except as provided in SCR 20:1.5(g), unearned fees and funds advanced by a client or 3rd party for payment of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to SCR 20:1.5(h). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[3] SCR 22.03(2) provides:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[4] SCR 22.03(6) provides: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[5] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

¶11 The next client matter detailed in the OLR's complaint involves Attorney White's representation of J.B., who hired Attorney White in 2017 to represent him in three criminal matters. J.B. and his girlfriend, S.T., paid Attorney White $3,750. The funds were paid in contemplation of future services. Attorney White failed to deposit the funds into his trust account. Attorney White responded to a text message from S.T. by using profanity. After that exchange, S.T. and J.B. acted to terminate Attorney White's representation, which was followed by Attorney White's stipulated withdrawal from the cases.

¶12 J.B. requested an itemized billing statement for the work Attorney White had performed. Attorney White refused to provide the itemization and told J.B. not to contact him again. J.B. pursued fee arbitration through the State Bar of Wisconsin, but Attorney White failed to respond to the State Bar, which resulted in dismissal of the arbitration request. After J.B. filed a grievance against Attorney White, Attorney White told the OLR investigator he would not participate in the process because he believed the investigation was the result of racial bias. After this court issued an order to show cause why Attorney White's license to practice law should not be temporarily suspended as a result of his willful failure to cooperate with the OLR's investigation, Attorney White provided the OLR with a response to J.B.'s grievance. This court then granted the OLR's request to withdraw its motion for temporary license suspension.

7

¶13 The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of J.B.:

**Count 3:** By failing to place advanced fees into his trust account, without evidence of an intention to follow the SCR 20:1.5(g) alternative, Attorney White violated SCR 20:1.5(f).

**Count 4:** By failing to respond to J.B.'s requests for an accounting, Attorney White violated SCR 20:1.5(b)(3).[6]

**Count 5:** By using vulgar and abusive language towards S.T., who was communicating with Attorney White on J.B.'s behalf regarding his case, Attorney White violated SCR 40.15,[7] enforceable via SCR 20:8.4(g).[8]

**Count 6:** By willfully failing to timely and fully respond to J.B.'s grievance, Attorney White violated SCR 22.03(2), and SCR 22.03(6), enforceable via SCR 20:8.4(h).

¶14 The next client matter detailed in the OLR's complaint involved Attorney White's representation of J.D. J.D.'s father, J.B., hired Attorney White to represent J.D. in an appeal arising out of two criminal matters in Milwaukee County. J.B. paid Attorney White an advanced fee of $2,400. Attorney White did not provide a written communication regarding the

---

[6] SCR 20:1.5(b)(3) provides: "A lawyer shall promptly respond to a client's request for information concerning fees and expenses."

[7] SCR 40.15 provides: "I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged; . . . "

[8] SCR 20:8.4(g) provides: "It is professional misconduct for a lawyer to violate the attorney's oath."

8

representation, nor did he deposit the fees into his trust account.  Attorney White was subsequently asked to provide a refund of fees paid, but he refused to comply with the request. He also failed to cooperate with the OLR's investigation of a grievance until he was served with an order to show cause from this court.

¶15  The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of J.D.:

> **Count 7:**  By failing to provide a written communication to J.D. and/or J.B. defining the terms and scope of the representation, and the purpose and effect of the $2,400 advanced fee paid by J.B., Attorney White violated SCR 20:1.5(b)(1) and (2).[9]

> **Count 8:**  By failing to place advanced fees into his trust account, without evidence of an intention to

---

[9] SCR 20:1.5(b)(1) and (2) provides:

> (1) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate as in the past.  If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing.  Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

> (2) If the total cost of representation to the client, including attorney's fees, is more than $1000, the purpose and effect of any retainer or advance fee that is paid to the lawyer shall be communicated in writing.

follow the SCR 20:1.5(g) alternative, Attorney White violated SCR 20:1.5(f).

**Count 9:** By failing to advance J.D.'s interest in the matter of an appeal or postconviction motion, Attorney White violated SCR 20:1.3.[10]

**Count 10:** By falsely stating to F.D., J.D's then wife, that he had performed substantial work on J.D.'s case, including requesting transcripts and preparing documents for J.D.'s appeal, and by falsely stating to F.D. that he had five attorneys working on J.D.'s case, Attorney White violated SCR 20:8.4(c).[11]

**Count 11:** By failing to refund any unearned fees to J.D. and/or J.B. after having failed to advance J.D.'s case, thereby rendering at least a portion of the advanced fee unearned, Attorney White violated SCR 20:1.16(d).[12]

**Count 12:** By willfully failing to timely and fully respond to the OLR in the J.D. and J.B. grievance matter, Attorney White violated SCR 22.03(2) and SCR 22.03(6), enforceable via SCR 20:8.4(h).

¶16 The next client matter detailed in the OLR's complaint involved Attorney White's representation of D.E., who hired

---

[10] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[11] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[12] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Attorney White to represent him with respect to a bench warrant that had been issued against him in Dodge County and with respect to a civil claim against Madison Metro Transit. Attorney White received two payments of $300 from D.E. and agreed to a contingent fee arrangement regarding the civil claim. Attorney White did not have a written fee agreement with D.E., nor did he deposit the fees paid into his trust account even though the funds paid were in contemplation of future services.

¶17 The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of D.E.:

> **Count 13:** To the extent that Attorney White's oral fee agreement with D.E. contained a contingent fee component, Attorney White violated SCR 20:1.5(c).[13]

---

[13] SCR 20:1.5(c) provides:

> A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by par. (d) or other law. A contingent fee agreement shall be in a writing signed by the client, and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and if there is a recovery, showing the remittance to the client and the method of its determination.

11

**Count 14:** By failing to place advanced fees into his trust account, without evidence of an intention to follow the SCR 20:1.5(g) alternative, Attorney White violated SCR 20:1.5(f).

¶18 The next client matter detailed in the OLR's complaint involved Attorney White's representation of K.G., who hired Attorney White with respect to a civil rights claim against the Village of Elm Grove Police Department. Attorney White advised K.G. by email that he had reviewed documents relating to his potential civil rights claim and that he believed K.G. likely had a basis for a civil lawsuit under 42 U.S.C. § 1983. K.G. paid Attorney White $3,000 toward attorney fees, believing that Attorney White had agreed to file a civil suit on his behalf. Attorney White did not have a written fee agreement with K.G., nor did he deposit the fees paid into his trust account. K.G. subsequently emailed Attorney White to request a refund of the $3,000 and an accounting of work that had been performed. Attorney White failed to provide an accounting or a refund.

¶19 The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of K.G.:

**Count 15:** By failing to provide a written communication to K.G. defining the terms and scope of the representation and the purpose and effect of the advanced portion of the $3,000 fee paid by K.G., Attorney White violated SCR 20:1.5(b)(1) and (2).

**Count 16:** By failing to place any of the $3,000 fee paid by K.G., at least a portion of which was an advanced fee, into his trust account, without evidence of an intention to follow the SCR 20:1.5(g) alternative, Attorney White violated SCR 20:1.5(f).

12

**Count 17:** By failing to refund any unearned fees to K.G., Attorney White violated SCR 20:1.16(d).

¶20 The next client matter detailed in the OLR's complaint involved Attorney White's representation of C.C., who hired Attorney White to represent her son in a postconviction juvenile criminal matter. C.C. paid Attorney White $3,000 as an advanced fee. Attorney White did not have a written fee agreement with C.C. Attorney White told C.C. he would take action to attempt to have her son's guilty plea withdrawn. Although Attorney White represented to C.C. that he had submitted petitions in the case, in fact he had not made any filings. C.C. subsequently advised Attorney White she was terminating his representation and asked for a full refund of fees. She then filed a grievance with the OLR. Attorney White responded to the grievance by saying he never represented C.C. or her son and that he did not take on juvenile matters.

¶21 In March of 2018, the State Bar of Wisconsin notified Attorney White that the Wisconsin Lawyers' Fund for Client Protection (the Fund) had approved payment of $3,000 to C.C. with the explanation that money had been "lost because of [White's] dishonest conduct."

¶22 The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of C.C.:

**Count 18:** By failing to provide a written communication to C.C. defining the terms and scope of the representation and the purpose and effect of the $3,000 advanced fee paid by C.C., Attorney White violated SCR 20:1.5(b)(1) and (2).

13

**Count 19:** By failing to file a petition to withdraw C.C.'s son's plea, or to take steps to advance C.C.'s son's matter, Attorney White violated SCR 20:1.3.

**Count 20:** By falsely stating to C.C. that he requested transcripts, filed petitions, and refiled petitions on C.C.'s son's behalf, Attorney White violated SCR 20:8.4(c).

**Count 21:** By failing to refund any unearned fees to C.C. after having failed to perform any work on C.C.'s son's matter, Attorney White violated SCR 20:1.16(d).

**Count 22:** By misrepresenting to the OLR that he never represented C.C. or her son, Attorney White violated SCR 22.03(6), enforceable via SCR 20:8.4(h).

¶23 The next client matter detailed in the OLR's complaint involved Attorney White's representation of J.J., who hired Attorney White to represent him in a divorce matter and a criminal matter. J.J. paid Attorney White $18,000.

¶24 The OLR's complaint alleged the following count of misconduct with respect to Attorney White's representation of J.J.:

**Count 23:** By failing to place and hold advanced fees in his trust account until earned, without evidence of an intent to follow the alternative stated in former and current rules, Attorney White violated former SCR 20:1.15(b)(4),[14] and current SCR 20:1.5(f).

---

[14] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, 2016 WI 21 (issued Apr. 4, 2016, eff. July 1, 2016).

Former SCR 20:1.15(b)(4) provides:

Except as provided in par. (4m) unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for

14

¶25  The next client matter detailed in the OLR's complaint involved Attorney White's representation of W.M., who filed a Fair Housing Discrimination complaint against his landlord.  The Equal Rights Division (ERD) found probable cause to believe that the landlord had discriminated against W.M. because of race, color, and national origin under the Wisconsin Open Housing Law. W.M. hired Attorney White to represent him with respect to claims of eviction allegedly based on race, color, and national origin and paid Attorney White $750 for his representation. Although the fees were paid in contemplation of future services, Attorney White did not provide W.M. with a written fee agreement nor did he place the $750 into his trust account.

¶26  The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of W.M.:

**Count 24:**  By failing to file a notice of appearance or otherwise advance W.M.'s interests in the ERD matter, Attorney White violated SCR 20:1.3.

**Count 25:**  By failing to place advanced fees into his trust account, without evidence of an intention to follow the SCR 20:1.5(g) alternative, Attorney White violated SCR 20:1.5(f).

**Count 26:**  By falsely stating to W.M. that he sent a letter notifying ERD of his representation, Attorney White violated SCR 20:8.4(c).

**Count 27:**  By failing to refund any unearned fees to W.M. after having failed to perform any work on W.M.'s matter, Attorney White violated SCR 20:1.16(d).

---

payment of costs shall be held in trust until the costs are incurred.

**Count 28:** By misrepresenting to the OLR that he terminated his representation of W.M. after one week and that he had refunded the $750 fee to W.M., Attorney White violated SCR 22.03(6), enforceable via SCR 20:8.4(h).

¶27 The next client matter detailed in the OLR's complaint involved Attorney White's representation of P.W. According to an engagement letter and fee agreement, P.W. would pay Attorney White a flat fee of $7,500, which included representation "up and through trial if necessary." P.W. paid Attorney White $2,000 and agreed to pay him the remainder of the balance through monthly payments of at least $400. P.W. through his girlfriend, S.A., made $400 payments to Attorney White by check on four occasions, although P.W. or S.A. later placed a stop payment on the final check. Attorney White did not deposit the fees paid into his trust account although they were paid in contemplation of future services.

¶28 Attorney White made several court appearances on behalf of P.W. P.W. appeared in court for his final pretrial conference, but Attorney White did not appear. The circuit court noted that Attorney White's license had been suspended and, as a result, he could not provide legal representation to P.W. The court ordered Attorney White withdrawn from the case and referred P.W. to the state public defender's office to be evaluated for representation.

¶29 After P.W. filed a grievance with the OLR against Attorney White, Attorney White told the OLR that P.W. told him he had hired another attorney. In February of 2018, Attorney Jaconi forwarded to the OLR a profanity laden email from

16

Attorney White regarding three grievance investigations, including P.W.'s grievance. Among other things, Attorney White's email said, "I plan on doing nothing until [OLR investigator] is lying in her own blood. Please feel free to tell her, I am this close to becoming violent."

¶30 The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of P.W.:

> **Count 29:** By failing to place advanced fees into his trust account, without evidence of an intention to follow the SCR 20:1.5(g) alternative, Attorney White violated SCR 20:1.5(f).

> **Count 30:** By using threatening, vulgar, and abusive language directed towards the OLR staff, Attorney White violated SCR 40.15, enforceable via SCR 20:8.4(g).

¶31 The next client matter detailed in the OLR's complaint arose out of Attorney White's representation of R.S., who hired White Law Offices LLC to represent M.A. in a medical malpractice suit and to represent R.S. with respect to a probate matter involving his mother's estate. The engagement letter and fee agreement signed by R.S. provided that R.S. agreed to pay White Law Offices LLC a $5,000 flat fee plus a 25 percent contingent fee on any settlement or award in the medical malpractice suit. Attorney White signed the engagement letter and fee agreement on behalf of White Law Offices LLC.

¶32 Jonathan Gigot, an attorney formerly associated with Attorney White's firm was the attorney assigned to handle these cases. The engagement letter and fee agreement stated that R.S.

17

and M.A. gave "informed consent after Jonathan Gigot has proposed the course of conduct, has communicated adequate information, and has explained all material risks of and reasonable available alternatives to the proposed course of conduct."

¶33 R.S. paid Attorney White $5,000, which was characterized by the engagement letter and fee agreement as "in the form of a Firm Credit, secured by Cole White." The firm credit resulted from the sale of a camper vehicle from R.S. to Attorney White, with the Bill of Sale listing a total purchase price for the camper of $6,700, of which $5,000 was a legal fee credit and $1,700 was paid in cash. Neither R.S. nor M.A. provided informed consent, in writing and signed, as to Attorney White's role in the camper transaction. Attorney White did not advise them in writing of the desirability of seeking independent legal counsel on the transaction.

¶34 Attorney Gigot subsequently left White Law Offices LLC, at which time he explained to R.S. and M.A. that he believed their cases were too much for a one- or two-person law firm to handle and advised them to seek out a larger law firm to handle their matters. Attorney White offered to return the camper vehicle to R.S. in exchange for a return of the $1,700 paid by Attorney White plus all maintenance, upkeep, and everything else that went into it. Attorney White made no other effort to refund any unearned fees to R.S. or M.A.

¶35 After R.S. filed a grievance with the OLR, Attorney White told the OLR at various times: that he told R.S. and M.A.

18

to speak to a different firm about the camper transaction; that he did not advise them of the desirability of seeking the advice of independent legal counsel about the camper transaction; and that R.S. and M.A. did provide a signed written informed consent, but Attorney White was not able to produce it.

¶36 Attorney White made profane Instagram comments directed at R.S. including, "keep fucking with me [R.].   I promise you'll live to regret it.   I'm keeping a tab on everyone who's crossed me, and the bill is going to come due soon." Attorney White also stated in an Instagram comment directed to R.S., "you are such an obsessed, pathetic loser."

¶37 The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of R.S. and M.A.:

> **Count 31:**   By obtaining the camper vehicle via a business transaction with his client(s), without providing required written advice or obtaining informed written consent, Attorney White violated SCR 20:1.8(a)(2) and (3).[15]

---

[15] SCR 20:1.8(a)(2) and (3) provides:

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the

19

**Count 32:** By failing to return any unearned portion of the net advanced fee of $5,000, Attorney White violated SCR 20:1.16(d).

**Count 33:** By using threatening, vulgar, and abusive language towards R.S., Attorney White violated SCR 40.15, enforceable via SCR 20:8.4(g).

¶38 The next client matter detailed in the OLR's complaint involved Attorney White's representation of D.N., who hired Attorney White to represent him in an Oconto County case. The engagement letter and fee agreement signed by D.N. provided that he would pay Attorney White a flat fee of $10,800. D.N. paid Attorney White $10,800 and made an additional $40 payment. Although the funds paid were in contemplation of future services, Attorney White did not place the advanced fees into his trust account.

¶39 Attorney White entered an appearance in D.N.'s case on February 12, 2018 and withdrew on March 22, 2018. On February 20, 2018, Attorney White met with D.N. to review discovery. D.N. asked Attorney White about any disciplinary complaints that were pending against him at that time. Attorney White told D.N. that any disciplinary complaints had been resolved and there were no complaints currently pending. This was a false statement.

¶40 On March 23, 2018, D.N. requested a full refund of the $10,800 he had paid Attorney White. Attorney White did not provide D.N. with a closing letter or accounting after his

_____

transaction, including whether the lawyer is representing the client in the transaction.

20

representation was terminated, nor did he refund any fees. Attorney White did not earn the $10,800 he was paid.

¶41 After D.N. filed a grievance with the OLR, Attorney White told the OLR he had completed "total trial prep" for the case, but he provided no documentation to support this claim. Attorney White accused D.N. of sending "a threatening lie filled text message that shows OLR influenced his behavior and decision making." He also accused D.N. of using "racially charged language" on the phone. In fact, D.N.'s text messages to Attorney White did not contain any threatening language.

¶42 On October 9, 2018, the Fund approved payment of $10,840 to D.N. because the funds had been, "lost because of [White's] dishonest conduct."

¶43 The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of D.N.:

**Count 34:** By failing to place advanced fees into his trust account, without evidence of an intention to follow the SCR 20:1.5(g) alternative, Attorney White violated SCR 20:1.5(f).

**Count 35:** By falsely stating to D.N. that he had no pending disciplinary matters, Attorney White violated SCR 20:8.4(c).

**Count 36:** By failing to refund the unearned portion of D.N.'s fees upon termination of the representation, and failing to provide D.N. an accounting, Attorney White violated SCR 20:1.16(d).

¶44 The next client matter detailed in the OLR's complaint alleged four counts of misconduct arising out of Attorney White's representation of C.T., who hired him to represent her

21

on a petition to obtain court approval to move from Wisconsin to Puerto Rico with her minor children. She shared custody of the children with her ex-husband. C.T. paid Attorney White $1,500 to "cover the drafting of a stipulation and notice to your ex-husband for the purposes of moving the children." The engagement letter and fee agreement provided that if the ex-husband agreed to the stipulation, the matter would be concluded, but if he did not agree, C.T. would pay an additional $2,000 to Attorney White to undertake additional proceedings relating to the custody of the children. Although the funds paid by C.T. were paid in contemplation of future services, making them advanced fees, Attorney White did not place the money in his trust account.

¶45 On July 18, 2017, Attorney White advised C.T. that he had filed the notice of her move with the circuit court and the ex-husband had failed to respond. At that time, Attorney White had not in fact filed anything in C.T.'s case. On September 21, 2017, Attorney White advised C.T. that there had been a hearing that morning in which the court granted his request for a default and that C.T. was free to move. Attorney White did not provide any documentation to C.T. relating to any hearing or her ability to move with the children. C.T. subsequently contacted the circuit court to obtain records regarding the default judgment and discovered nothing had ever been filed with the court and there had been no hearing or default judgment entered.

¶46 After C.T. filed a grievance with the OLR, Attorney White denied sending communications to C.T. He also told the

22

OLR he had no recollection of C.T.'s case and that he had limited recollection of any matters from June 2017 through the summer of 2018 due to mental health treatment.

¶47 On October 9, 2018, the State Bar of Wisconsin notified Attorney White that the Fund had approved payment of $1,500 to C.T. because the funds had been "lost because of [White's] dishonest conduct."

¶48 The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of C.T.:

**Count 37:** By failing to place advanced fees in his trust account, without evidence of an intention to follow the SCR 20:1.5(g) alternative, Attorney White violated SCR 20:1.5(f).

**Count 38:** By failing to act in furtherance of C.T.'s interests in lawfully moving with her minor children, Attorney White violated SCR 20:1.3.

**Count 39:** By falsely stating to C.T. that he had filed a notice with the court and that he had obtained a default judgment in C.T.'s favor, Attorney White violated SCR 20:8.4(c).

**Count 40:** By failing to refund any unearned fees to C.T. after having failed to advance C.T.'s case, Attorney White violated SCR 20:1.16(d).

¶49 The final matter detailed in the OLR's complaint arose out of Attorney White's representation of F.T., who hired Attorney White to represent him and his wife (the T.s) in a real estate contract dispute regarding the release of an earnest money deposit of $17,000 relating to the purchase of property in Puerto Rico. There was no fee agreement to define or limit the scope of Attorney White's representation. F.T. paid Attorney

23

White a $1,000 advanced fee, which Attorney White did not place in his trust account.

¶50 On July 30, 2017, Fox Communities Credit Union returned the $17,000 earnest money payment to the T.s from escrow. On December 6, 2017, the sellers of the property in Puerto Rico demanded that the T.s replace the $17,000 to escrow, and the T.s bank placed a hold on the $17,000 earnest money deposit as a result of the dispute.

¶51 By correspondence dated February 22, 2018, counsel for the sellers of the property wrote to the T.s requesting return of the earnest money deposit and advising that if the T.s did not respond within 10 days the sellers intended to initiate litigation. On February 27, 2018, F.T. contacted Attorney White about the February 22, 2018 letter and asked Attorney White to meet to discuss the next step. Attorney White agreed to meet.

¶52 On March 30, 2018, Attorney White emailed F.T. advising that he had sent notices and a denial of claim relating to the earnest money deposit issue and that he would try to contact them again regarding the status of the matter.

¶53 On March 31, 2018, the T.s were served with a lawsuit by the sellers of the Puerto Rico property. F.T. contacted Attorney White about the lawsuit. Attorney White had not been aware of it.

¶54 On April 3, 2018, the T.s terminated Attorney White's representation and asked to have their file returned. Upon receiving their file, the T.s discovered that Attorney White had not prepared or sent anything on their behalf in response to the

24

February 22, 2018 letter and had not attempted any contact with the sellers' attorney.

¶55 After the T.s filed a grievance against Attorney White with the OLR, Attorney White told the OLR he did not represent the T.s with respect to the sellers' demand as outlined in the February 22, 2018 letter. Attorney White also questioned the veracity of the emails between himself and F.T., saying, "Bullshit. That's the totality of my response . . . I got them their 17k back. You people really are fucking unbelievable. Don't message me with any of these bullshit liars anymore."

¶56 The OLR's complaint alleged the following counts of misconduct with respect to Attorney White's representation of the T.s:

> **Count 41:** By failing to place advanced fees into his trust account, without evidence of an intention to follow the SCR 20:1.5(g) alternative, Attorney White violated SCR 20:1.5(f).
>
> **Count 42:** By failing to communicate the scope of the representation either orally or in writing, Attorney White violated SCR 20:1.5(b)(1).
>
> **Count 43:** By failing to respond to the sellers' demand for the return of the $17,000 earnest deposit, Attorney White violated SCR 20:1.3.
>
> **Count 44:** By falsely stating to F.T. that he prepared and/or filed notices and a denial of claim, Attorney White violated SCR 20:8.4(c).

¶57 The OLR requested, and the referee agreed, that Attorney White should be required to make restitution to the following clients in the following amounts:

• In the J.D. matter, to J.B. in the amount of $2,400;

25

- In the K.G. matter, to the Fund in the amount of $3,000, as reimbursement the Fund paid to K.G.;

- In the C.C. matter, to the Fund in the amount of the $3,000, as reimbursement the Fund paid to C.C.;

- In the W.M. matter, to W.M. in the amount of $750;

- In the R.S. matter, to R.S. in the amount of $5,000;

- In the D.N. matter, to the Fund in the amount of the $10,840, as reimbursement the Fund paid to D.N.;

- In the C.T. matter, to the Fund in the amount of the $1,500, as reimbursement the Fund paid to C.T.

¶58 Attorney White has not filed an appeal from the referee's recommendation. Accordingly, our review proceeds pursuant to SCR 22.17(2). On September 17, 2020, this court issued an order directing the parties to explain why Attorney White should not be ordered to pay restitution to all clients. Attorney White did not respond. The OLR responded on October 5, 2020. It said that, in addition to those clients mentioned in the referee's report, Attorney White should also be required to make restitution to J.B. and S.T. in the amount of $3,750, less any amounts Attorney White can prove he earned.

¶59 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

26

¶60 We agree with the referee that Attorney White should be declared in default. Although Attorney White was given notice of the hearing on the motion for a default judgment, he failed to appear or present a defense.

¶61 We also agree with the referee that the allegations in the OLR's complaint have been established and that Attorney White engaged in all of the acts of the misconduct alleged in the complaint.

¶62 As to the sanction, after careful review of the matter, we conclude that a two-year suspension is an inadequate sanction for Attorney White's misconduct. As noted, in the previous disciplinary action, Attorney White apparently commenced his solo law practice shortly after graduating from law school and almost immediately got himself into trouble due to his apparent disdain for doing the necessary research or work to perform as a capable advocate for his clients. In the previous disciplinary matter, Attorney White was found to have committed 27 counts of professional misconduct in his handling of four client matters. In this case, he was found to have committed 44 counts of misconduct involving 13 separate clients. He showed an utter lack of regard for his clients, and when called to account for his actions he lashed out at both the clients and the OLR investigators with profane comments and threats of physical violence.

¶63 Although no two disciplinary matters are precisely alike, we find that the misconduct at issue here is somewhat analogous to that presented in In re Disciplinary Proceedings

27

Against Hicks, 2012 WI 101, 343 Wis. 2d 411, 816 N.W.2d 316. In Hicks, we imposed a four-year suspension as discipline reciprocal to that imposed by the Supreme Court of Tennessee. The misconduct rose out of six separate grievances and included neglecting client matters, charging an unreasonable fee, failing to respond to client inquiries, and making multiple misrepresentations to a client, to opposing counsel, and the State's lawyer regulatory agency. Given the number of counts of misconduct at issue here, which included threats by physical violence against the OLR's investigator and at least one client, the number of clients affected by the misconduct, and the seriousness of the misconduct, a four-year suspension is appropriate.

¶64 Finally, we find that Attorney White should be required to make restitution to the clients listed in the referee's report as well as the additional client identified in the OLR's October 5, 2020 response to this court's order to show cause. We also agree with the referee that Attorney White should pay the full costs of the proceeding.

¶65 IT IS ORDERED that that the license of Cole J. White to practice law in Wisconsin is suspended for a period of four years, effective the date of this order.

¶66 IT IS FURTHER ORDERED that within 60 days of the date of this order, Cole J. White shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $2,514.74 as of January 7, 2020.

28

¶67  IT IS FURTHER ORDERED that within 60 days of the date of this order, Cole J. White shall make restitution as follows:

- In the J.B. matter, to J.B. and S.T., in the amount of $3,750, less any amounts Attorney White can prove he earned.

- In the J.D. matter, to J.B. in the amount of $2,400;

- In the K.G. matter, to the Fund in the amount of $3,000, as reimbursement the Fund paid to K.G.;

- In the C.C. matter, to the Fund in the amount of the $3,000, as reimbursement the Fund paid to C.C.;

- In the W.M. matter, to W.M. in the amount of $750;

- In the R.S. matter, to R.S. in the amount of $5,000;

- In the D.N. matter, to the Fund in the amount of the $10,840, as reimbursement the Fund paid to D.N.;

- In the C.T. matter, to the Fund in the amount of the $1,500, as reimbursement the Fund paid to C.T.

¶68  IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶69  IT IS FURTHER ORDERED that, to the extent he has not already done so, Cole J. White shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶70 IT IS FURTHER ORDERED that the administrative suspension of Cole J. White's license to practice law in Wisconsin, due to his failure to pay mandatory bar dues and for failure to file Office of Lawyer Regulation trust account certification, will remain in effect until each reason for the

29

administrative suspension has been rectified pursuant to SCR 22.28(1).

¶71 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(3).